NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| VIRGINIA McCANN, on behalf of the Estate of William E. McCann,<br><br>Plaintiff,<br><br>v.<br><br>THE GEORGE W. NEWMAN IRREVOCABLE TRUST, THE BANK OF NEW YORK, MARC JOSEPH, PATRICIA J. THERYOUNG,<br><br>Defendants. | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 03-cv-6077 (DMC) |

<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

      This matter comes before the Court upon separate motions to dismiss by Defendants The George W. Newman Irrevocable Trust ("Newman Trust"), The Bank of New York ("Bank"), Marc Joseph ("Joseph") and Patricia Theryoung ("Theryoung").  Also pending before this Court is Plaintiff Virginia McCann's motion to strike the Certification of Richard Kahn, Esq. ("Kahn Certification").  Pursuant to Rule 78 of the Federal Rules of Civil Procedure no oral argument was heard.  After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendants' motion to dismiss based on lack of subject matter jurisdiction is **denied**, Defendants Bank and Theryoung's motion to dismiss for failure to state a claim is **denied** as to Counts One and Two and **granted** as to Count Three, and Plaintiff's motion to strike is **denied** in part and **granted** in part.

**I.  BACKGROUND**

    **A.  Factual Background**

The relevant facts of this case, as recognized by the Third Circuit are set forth herein.

On July 6, 1990, George W. Newman established and funded the George W. Newman Irrevocable Trust to acquire and hold property in Secaucus, New Jersey. Newman named trustees Patricia Theryoung, Marc Joseph, and the National Community Bank, which was later acquired by the Bank of New York. Newman's development company, Allied Junction Corporation, was to develop the property acquired by the trust into a commercial and transportation center. Newman hired William E. McCann as President, Chief Executive Officer, and Director of Operations of Allied Junction Corporation, which later became Secaucus Connection, L.L.C.

A dispute arose between McCann and the Newman Trust over McCann's compensation. Theryoung and the Bank of New York, as trustees, agreed to settle the dispute by granting McCann an equity interest in the development project. Joseph, the third trustee, filed an action in state court to enjoin the other two trustees from entering the proposed agreement with McCann and from granting McCann any interest in trust property.

McCann died in February 2002 while this and related state court actions were pending. McCann's widow, Virginia, filed an action to intervene on behalf of McCann's estate, which the court denied. The court also dismissed all pending actions because Theryoung and the Bank of New York - the trustees who negotiated the agreement granting McCann an interest in the development project - had since resigned.

    **B.  Procedural Background**

Plaintiff filed the instant action in this Court on December 21, 2003. Thereafter, Plaintiff filed an Amended Complaint on July 28, 2004 seeking the following relief:

>	(1) **Specific Performance**, demanding that the Newman Trust be Ordered to deliver to McCann the fully executed Settlement Agreement and pay an award of attorney's fees (Count One);
>
>	(2) **Breach of Contract**, demanding an accounting of any and all monies received by the Newman Trust from the refinancing, lease and/or sale of the Secaucus Project, demanding that Defendants relinquish 15% of those profits and pay an award of attorney's fees (Count Two);
>
>	(3) **Injunction**, requesting this Court to enter an Order enjoining Defendants from "taking any action that will dilute, dissipate or otherwise impair Plaintiff's interest, including attempting to sell, lease or in any way encumber the Property" and an award of attorney's fees, costs and other appropriate relief (Count Three);
>
>	(4) **Fraudulent Inducement**, requesting that this Court enter judgment against Defendants with an award of attorney's fees and appropriate costs and other relief (Count Four); and
>
>	(5) **Negligent Misrepresentation**, requesting that this Court enter judgment against Defendants with an award of attorney's fees and appropriate costs and other relief (Count Five).

See Am. Compl. 9-13.  Subsequently Defendants Newman Trust, Bank of New York, Joseph and Theryoung filed separate motions to dismiss.  All Defendants contended that this Court lacks subject matter jurisdiction over this action due to lack of diversity amongst the parties.  Additionally, Defendants Bank of New York and Theryoung sought dismissal of Counts One, Two and Three of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  Plaintiff submitted opposition to the motions to dismiss and also filed a motion to strike the Kahn Certification submitted in conjunction with the Bank's motion to dismiss.  Pursuant to a letter opinion-order dated April 8, 2005 this Court granted Defendants' motion to dismiss, finding that the Court lacked subject matter jurisdiction over Plaintiff's claims.  The Court did not consider Defendants' additional proposed grounds for dismissal and denied Plaintiff's motion to strike as moot.

Plaintiff appealed the April 8, 2005 decision to the Third Circuit. Thereafter, the Third Circuit vacated this Court's decision and remanded the case to this Court. Specifically, the Third Circuit found that this Court improperly used a "clear and convincing" standard in determining whether McCann changed his domicile. The Third Circuit further ruled that the proper standard to apply in determining whether a party has changed domicile is a "preponderance of the evidence" standard. See McCann v. The George W. Newman Irrevocable Trust, 458 F.3d 281 (3d Cir. 2006).

### C.     Facts Regarding Domicile

As set forth in the Third Circuit's opinion in this case, the material facts regarding McCann's domicile are undisputed. In 1969, he and his wife, Virginia, purchased a house in Short Hills, New Jersey, where they resided for over thirty years. In 1990, they purchased a second house in North Hampton, New Hampshire. In June 2000, they sold their New Jersey house and moved their furniture and personal belongings to New Hampshire. Virginia became a full-time resident of New Hampshire, but McCann rented an apartment in Springfield, New Jersey, and continued to live and work in New Jersey during the week. He spent weekends in New Hampshire.

McCann stopped commuting to New Jersey in November, 2001, when he stopped receiving a salary from Secaucus Connection, L.L.C. During the three months between November 2001 and his death in February 2002, he traveled to New Jersey four times to attend meetings regarding the development project. He did not use his New Jersey apartment after January, but he did not cancel or break the lease or sublet the apartment.

McCann had ties to both New Jersey and New Hampshire. He registered to vote in New Jersey in August 2001. Thereafter, McCann registered to vote in New Hampshire at the end of November, but never actually voted there prior to his death. On July 30, 1999, he obtained a New

Hampshire driver's license, but he maintained a New Jersey license, which he renewed after receiving the New Hampshire license. When Virginia became a full-time New Hampshire resident, the McCanns registered and insured all of their personal vehicles in New Hampshire. McCann had use of a company car in New Jersey.

McCann transferred his personal bank accounts to New Hampshire, but maintained a brokerage account in excess of $2.6 million in New Jersey. His federal income tax returns filed during his life represented he was a New Jersey resident. But his 2001 federal income tax return, prepared by Virginia and filed after his death, represented he was a New Hampshire resident. Virginia's application for continued health insurance coverage after McCann's death represented he was a New Jersey resident. McCann's funeral was held in New Jersey but he was buried in New Hampshire.

## II.    JURISDICTION

### A.    Plaintiff's Burden in Proving Change in Domicile

According to the Third Circuit's decision in this case, Plaintiff must show that McCann established a new domicile in New Hampshire by a preponderance of the evidence. Id. at 289. "[T]he domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning." Vlandis v. Kline, 412 U.S. 441, 454 (1973). In determining McCann's domicile, this Court must consider several factors, including "declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business." Krasnov v. Dinan, 465 F.2d 1298, 1301 (3d Cir. 1972). Additionally, the Third Circuit instructed that this Court may also consider the "location of brokerage and bank accounts, location of spouse and family, membership in unions and other

organizations, and driver's license and vehicle registration." 458 F.3d at 286 (citing 13B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 3612 (3d ed. 2005)).

There are two steps necessary for an instantaneous change in domicile: the individual must (1) take up residence at the new domicile and (2) intend to remain there. See Krasnov, 465 F.2d at 1300; Berger v. Berger, 210 F.2d 1298, 1300 (3d Cir. 1972); Gallagher v. Phila. Transp. Co., 185 F2d 543, 545 (3d Cir. 1951). "For adults, domicile is established by physical presence in a place in connection with a certain state of mind to remain there." See Miss. Choctaw Indian Band v. Holyfield, 490 U.S. 30, 48 (1989). Thus, a party alleging a change in domicile bears the burden of overcoming that a previously established domicile has been changed. There is a well-established presumption that "[a] domicile once acquired is presumed to continue until it is shown to have been changed." Mitchell v. U.S., 88 U.S. 350, 353 (1874); see also Korn v. Korn, 398 F.2d 689, 691 n.4 (3d Cir. 1968). As the Third Circuit explained, Plaintiff bears the initial burden of rebutting the presumption favoring the established domicile of New Jersey by "produc[ing] enough evidence substantiating a change to withstand a motion for summary judgment or judgment as a matter of law on the issue." McCann, 458 F.3d at 288. If Plaintiff overcomes the presumption in favor of the established domicile, Plaintiff nevertheless bears the burden of persuasion throughout the case of proving by a preponderance of the evidence that there was a change in domicile.

### B. McCann's Domicile at Time of Filing

This action was filed in federal court after McCann's death. Accordingly, this Court must ascertain whether McCann's domicile had changed to New Hampshire at the time of his death. As set forth above, McCann established a new domicile in New Hampshire only if he took up residence

-6-

there and intended to remain in New Hampshire indefinitely.  See Krasnov, 465 F.2d at 1300.

        1.      Residence

The undipusted facts of this case establish that McCann acquired a residence in New Hampshire as early as 1990.  However, "residence" is not synonymous with "domicile."  See Miss. Choctaw Indians, 490 U.S. at 48.  To prove a change in domicile, Plaintiff must also show that McCann intended to remain in New Hampshire indefinitely.

        2.      Intent to Remain

Utilizing a totality of the circumstances approach, it is the finding of this Court that Plaintiff overcomes the presumption favoring New Jersey as the established domicile.  Further, Plaintiff has shown by a preponderance of the evidence that McCann intended to remain in New Hampshire, as his residence, indefinitely.  Specifically, in considering the sum of McCann's actions, Plaintiff has established by a preponderance of the evidence that McCann intended to remain in New Hampshire as of November 2001.  At that time, McCann's New Jersey home of over thirty years had been sold and all his personal property moved to his new estate in New Hampshire.  Furthermore, McCann previously resided in New Jersey on weekdays between June 2000 and November 2001.  However, after November 2001 McCann visited New Jersey *only four times* and on each of the four occasions, McCann visited for business purposes.  See McCann, 458 F.3d at 285.  Additionally, McCann transferred all his personal bank accounts to New Hampshire, leaving only a brokerage account in New Jersey.  McCann took affirmative steps to relocate his personal life to New Hampshire by (1) breaking ties with his minister and house of worship; (2) ceasing treatment with his primary care physician; and (3) changing his family's holiday tradition of spending Christmas in Short Hills.  See Affidavit of Monsignor Trabold at ¶5; Affidavit of Dr. Burke at ¶4; Affidavit of Marguerite

Henderson at ¶2. Moreover, while McCann both registered to vote and voted in New Jersey in 2001 he subsequently registered to vote in New Hampshire in November 2001.

Undoubtedly, some of McCann's actions favor a finding that McCann did not change his established domicile of New Jersey to New Hampshire. For example, even though McCann obtained a New Hampshire driver's license in July 1999 he subsequently renewed his New Jersey driver's license, seemingly in violation of New Jersey law. See N.J.S.A. 39:3-10; N.J.S.A. 39:3-37. However, as Plaintiff notes, to change domicile, an individual need not break all ties with his previous domicile - to do so would be to effectively eviscerate the rule that an individual can establish a new domicile instantly.

Based on the foregoing, it is evident from the undisputed facts in this case that Plaintiff overcomes the presumption in favor of the established domicile. Moreover, reconsidering this case in light of the preponderance of evidence standard established by the Third Circuit, it is the finding of this Court that Plaintiff has shown that McCann changed his domicile to New Hampshire. Accordingly, there is diversity of citizenship amongst the parties and this Court is vested with jurisdiction to adjudicate Plaintiff's claims.

### III.    12(B)(6) DISMISSAL AS TO COUNTS ONE, TWO AND THREE

In addition to seeking dismissal for lack of jurisdiction, Defendants Bank of New York and Theryoung seek dismissal of Counts One, Two and Three of the Complaint on mootness grounds, Specifically, Defendants argue that no live "case or controversy" exists as to the relief requested in these counts because neither the Bank nor Theryoung are still trustees of the Newman Trust and thus cannot perform the sought after relief.

### A. Standard of Review on 12(b)(6) Motion to Dismiss

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir.1998). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

Ordinarily, a 12(b)(6) motion must be decided only upon the allegations set forth in the complaint, without considering any outside documents or available facts. If on a 12(b)(6) motion to dismiss, a party "presents matters outside the pleadings, the district court must convert the motion to dismiss into a motion for summary judgment, and give all parties a reasonable opportunity to present all material pertinent to such a motion under Rule 56." In re Bayside Prison Litig., 190 F. Supp. 2d 755, 760 (D.N.J. 2002). In deciding a 12(b)(6) motion to dismiss, the district court may only consider the complaint and limited categories of documents in order to "protect plaintiffs against, in effect, summary judgment by ambush." Id. (citing Bostic v. AT & T of the Virgin Islands, 166 F. Supp. 2d 350, 354-55 (D.V.I. 2001)). However, conversion to a motion for summary judgment is not required when a district court considers the following documents: (1) matters attached to the complaint; (2) matters incorporated into the pleadings by reference; (3) matters of public record; (4) matters integral to or upon which plaintiff's claim is based." In re Bayside, 190 F. Supp. 2d at 760 (internal citations omitted). The Third Circuit allows district courts to consider such documents because "neither party can claim prejudice or surprise by the court's reliance on the

document." Id.

  **B. Motion to Strike**

Before addressing Defendants Bank of New York and Theryoung's motion for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it is first necessary for this Court to resolve Plaintiff's cross-motion to strike portions of the Kahn Certification. Defendants rely on this certification in support of their Rule 12(b)(6) motion to dismiss.

Local Civil Rule 7.2(a) provides that affidavits and certifications submitted to the Court "shall be restricted to statements of fact within the personal knowledge of the affiant." As explained in note 2 to Rule 7.2(a), this local rule is drawn from Federal Rule of Civil Procedure 56(e) which provides that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." This rule applies to certifications as well. See Penn v. Wal-Mart Stores, Inc., 116 F. Supp. 2d 557, 560 n.3 (D.N.J. 2000).

In this case, Plaintiff claims that Kahn, counsel for Defendant The Bank of New York, lacks personal knowledge as to all portions of his certification, with the exception of the first paragraph, and, accordingly the certification should be stricken. These paragraphs include *inter alia* statements regarding

> - the history of the relationship between McCann, Newman and the Defendant Trustees and the exchanges between them
> - the circumstances of George Newman's creation of the irrevocable trust and his intentions with regard to the development of the Property sold to the trust
> - the reasons for Newman's hiring McCann
> - representations as to McCann's work with Newman's development companies
> - the impressions of various trustees in negotiating a settlement with McCann
> - state court filings
> - the effective date by which the Bank's Trustees resigned; and

   - a status conference in state court

Pls. Opp'n Br. 18-19.

  In response, Defendants argue that the vast majority of the Kahn Certification is based on Kahn's personal knowledge, gained from Kahn's personal involvement in these matters as counsel to the Bank in its capacity as trustee of the Newman Trust since August 1997. This Court is satisfied that Defendants have set forth an adequate basis for Kahn's personal knowledge of the information contained in his certification. Accordingly, the Kahn Certification should not be stricken pursuant to Local Civil Rule 7.2(a).

  In the alternative, Plaintiff agues that the Kahn Certification should be stricken because the Certification and its Exhibits are matters outside the pleadings that may not be considered on a Rule 12(b)(6) motion to dismiss. Plaintiff further argues that the Bank's motion to dismiss cannot be converted into a Rule 56 motion for summary judgment because no written or deposition discovery has occurred between the parties other than Rule 26 disclosures. In response, Defendants argue that Rule 12(b)(6) dismissal is appropriate because Plaintiff fails to allege a factual predicate in the Complaint that is concrete enough to warrant further proceedings. Additionally, Defendants have repeatedly argued that many of the documents submitted in support of the motion to dismiss are referenced in Plaintiff's Complaint and may be considered as part of the pleadings for purposes of this motion. See Defs. Br. at 19 n.1. In the alternative, Defendants contend that conversion of the motion to summary judgment is appropriate.

  From a review of the Complaint and the Kahn Certification it appears that while the entirety of the certification may not be considered for purposes of this motion to dismiss, some portions of the Certification may be considered because they are either incorporated in the Complaint by

-11-

reference or are matters of public record. See In re Bayside, 190 F. Supp. 2d at 760. Nevertheless, the key factual issue for purposes of this Rule 12(b)(6) motion - whether Defendants Bank of New York and Theryoung are still trustees of the Newman Trust - is contained in a paragraph of the Kahn Certification that is neither incorporated in the Complaint nor a matter of public record of which this Court can take judicial notice.

However, in this case, Defendants argue that dismissal is appropriate on mootness grounds. As set forth more fully below, issues of mootness raise questions regarding this Court's subject matter jurisdiction. It is permissible for the Court to look beyond the allegations set forth in the Complaint to affidavits showing that subject matter jurisdiction is lacking. See Berardi v. Swanson Mem'l Lodge No. 48 of the Fraternal Order of Police, 920 F.2d 198, 200 (3d Cir. 1990) (citing KVOS, Inc. v. Associated Press, 299 U.S. 269 (1936)). Accordingly, it is the finding of this Court that it may consider the portions of the Kahn Certification that relate to the mootness and justiciability issues raised by Defendants' Rule 12(b)(6) motion because these facts relate directly to the issue of subject matter jurisdiction.

**C.  Mootness**

Mootness is a federal question that must be decided before a Court can assume jurisdiction. N.C. v. Rice, 404 U.S. 244, 246 (1971). Accordingly, this Court may not adjudicate claims that are moot, or nonjusticiable, because it lacks the authority to do so. See id. (citing U.S. v. Ala. S.S. Co., 253 U.S. 113, 116 (1920)); see also Liner v. Jafco, Inc., 375 U.S. 301, 306 n.3 (1964)). As the Third Circuit has noted, "Article III does not permit federal courts to decide moot cases." Rosetti v. Shalala, 12 F.3d 1214, 1223 (3d Cir. 1993) (citing Liner, 375 U.S. at 306 n.3). Moreover, the "mootness doctrine incorporates prudential considerations as well." Int'l Bhd. of Boilermakers, etc.

v. Kelly, 815 F.2d 912, 915 (3d Cir. 1987).  Central to these prudential considerations is a policy question: "whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief."  Id. (quoting Jersey Cent. Power & Light Co. v. State of N.J., 772 F.2d 35, 39 (3d Cir. 1985)).

The "case or controversy" requirement mandates that this Court may only decide cases in which a "real and substantial controversy admitting of specific relief through decree of a conclusive character."  Rice, 404 U.S. at 246; see also Int'l Bhd. of Boilermakers, 815 F.2d at 915 (citing Powell v. McCormack, 395 U.S. 486, 496 (1969)).  In this case, Defendants contend that Plaintiff's Counts One, Two and Three fail for lack of a live "case or controversy."  Defs. Br. at 21.  Defendants emphasize that "[t]he Bank is not a trustee of the Newman Trust and has not held such position since March 1, 2002," and, as such "cannot grant the relief Plaintiff seeks."  Defs. Br. at 21, 23.  Specifically, the Bank argues that as a resigned trustee it cannot (1) "deliver to McCann the fully executed Settlement Agreement" (Count One); (2) provide "an accounting of monies received by the . . . Trust from the refinancing, lease and/or sale of the Project" (Count Two); or (3) "Relinquish 15% thereof to McCann in accordance with the terms of the parties' agreement" (Count Three).  Defs. Br. at 23-24; see Compl. p. 9-10.

In response, Plaintiff argues that even if the Bank "resigned as Trustee after fraudulently inducing and failing to abide by the terms of the settlement agreement," Counts One, Two and Three, still present a live "case or controversy."  Pl. Opp'n Br. at 23.  Plaintiff takes the position that it may "maintain a cause of action against the Bank to compel delivery of the executed agreement, damages for the Bank's breach of that agreement, and to prevent the Bank from acting in anyway that is adverse to Plaintiff's interest as it is pled in the Complaint."  Pl. Opp'n Br. at 23.

Upon a close reading of the Complaint, the Court notes that Counts One and Two are directed only at a single Defendant: the Newman Trust, while the remaining Counts are directed at all Defendants. Accordingly, the issue of whether or not the Bank and other former trustees of the Newman Trust can perform the relief requested in Counts One and Two is irrelevant because the demand for specific performance and an accounting are only directed at the Newman Trust.

As to Count Three, this Court agrees with the Defendant Bank and Theryoung's position that this Count is moot as to the resigned trustees. Both the Bank and Theryoung are "in no position to 'dilute, dissipate or otherwise impair Plaintiff's interest, including to sell, lease or in any way encumber the Property' " because they are no longer trustees of the Newman Trust. Accordingly, Count Three is dismissed as to Defendants the Bank of New York and Theryoung.

**IV.   CONCLUSION**

For the reasons stated, it is the finding of this Court that Defendants' motion to dismiss based on lack of subject matter jurisdiction is **denied**, Defendants' motion to dismiss for failure to state a claim is **denied** as to Counts One and Two and **granted** as to Count Three, and Plaintiff's motion to strike is **denied** in part. An appropriate Order accompanies this Opinion.

S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:      May   7  , 2007
Orig.:     Clerk
cc:        Counsel of Record
           The Honorable Mark Falk, U.S.M.J.
           File